ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.*
This attorney disciplinary proceeding arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Leonard J. Cline, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
In May 1991, Patsy Allday retained Morris Bart and Associates to represent her in a personal injury matter involving State Farm Mutual Automobile Insurance Company (“State Farm”): Mr. Bart’s only work in the case involved, arranging a doctor’s appointment for Mrs. Allday and sending several letters. •
Three months later, Mrs. Allday discharged Mr. Bart’s firm, and she and her husband, Arthur, retained respondent to *286 represent them in the matter. At that time, respondent paid Mr; Bart’s outstanding costs, $807.30, and sent Mr. Bart a form letter stating that he would “protect whatever interest in the attorney’s fees herein to which you may be entitled.” However, without notice to respondent or the Alldays, Mr. Bart later recorded his employment contract in the Allday case and notified State Farm of his interest in Mrs. Allday’s claim.
Subsequently, respondent successfully negotiated a settlement in the Allday case. In October 1993, State Farm issued a settlement draft in the amount of |?,$257,568.50, payable to Mrs. Allday, respondent, and Mr. Bart. State Farm also issued a second draft in the amount of $10,000, payable to Mr. Allday, respondent, and Mr. Bart. Without Mr. Bart’s knowledge or consent, an endorsement purporting to be his was placed on the back of both drafts. The settlement drafts were subsequently deposited into respondent’s client trust account.
DISCIPLINARY PROCEEDINGS
In July 1995, Mr. Bart filed a complaint against respondent with the ODC.[1] After its investigation, the ODC instituted one count of formal charges against respondent, alleging several violations of the Rules of Professional Conduct.[2] Respondent denied that he had forged Mr. Bart’s signature on the settlement drafts and indicated that he had given both drafts to Mrs. Allday so that she could obtain Mr. Bart’s endorsement on them. Respondent also denied any knowledge that Mr. Bart was owed an attorney’s fee or that he was claiming additional costs and expenses in the Allday case.
While the matter was being considered by a-hearing committee, respondent tendered a petition for consent discipline. Respondent acknowledged “the truth of the assertions set forth in the” formal charges; however, he claimed “that at no time did he ever personally endorse the name of Morris Bart to a check, commit a criminal act or misappropriate the funds of Morris Bart.” Respondent proposed a completely | 3deferred one year and one day suspension, subject to two years of supervised probation with conditions. The ODC concurred in the petition. However, this court rejected the proposed discipline and remanded the matter for further proceedings.[3]

Formal Hearing

Following remand, the matter was presented for formal hearing before a hearing committee. Respondent testified before the committee on his own behalf. Pursuant to a grant of prosecutorial immunity,[4] Mr. and Mrs. Allday also testified.
*287 ■ Mrs. Allday denied any knowledge of how Mr. Bart’s endorsement came to be placed on the back of the settlement checks, and she specifically denied that she took the checks from respondent’s office. However, she admitted that in an earlier statement, she had said that it was “possible” that she could have brought the checks to Mr. Bart’s office. Mrs. Allday ultimately told the committee, “I didn’t do it. I sure don’t remember doing it if I did it.”
Mr. Allday, like his wife, testified that he had no knowledge of how Mr. Bart’s endorsement came to be placed on the back of the checks. Mr. Allday also denied that he took the checks from respondent’s office.
By contrast, respondent testified that Mrs. Allday took the checks to Mr. Bart’s office. He explained that Mrs. Allday was “in a rush” to receive her money after the settlement was negotiated because she was not working and she was separated from her husband, and because she had recently purchased a car with a post-dated check |4written in anticipation of the settlement. Respondent said that Mrs. Allday telephoned his office every day after the mail was delivered to find out whether the settlement check had been received. When the checks finally arrived, respondent said that he told her the checks had Mr. Bart’s name on them, but that he did not know why. Respondent conceded that he did not telephone the insurance company or its counsel to determine why Mr. Bart was named as a payee on the settlement drafts, particularly Mr. Allday’s, since Mr. Bart had never represented him. Instead, respondent simply suggested to Mrs. Allday that having Mr. Bart’s name on the check “will delay us some, because we have to get it down to his office to get him to sign it.” Mrs. Allday told respondent that she did not want to wait any longer than she already had, so she suggested, “[w]hy don’t you just let me take it down there, and I’ll, get him to sign it.” Respondent saw nothing wrong with this proposal because the Alldays, whom he had known for two years, had done courier work in the past, and because he knew the bank would not allow Mrs. Allday to negotiate such a large, check without notifying him first.. Respondent testified that he clearly recalled that Mrs. Allday came by his office that day and took both checks with her. When Mrs. Allday returned later with the checks, all of the endorsements were on them; respondent deposited the checks into his trust account and disbursed Mrs. Allday’s net settlement to her that day. Respondent denied that he or anyone in his office signed Mr. Bart’s name on the two settlement drafts, and he claimed that he had “no idea” how Mr. Bart’s endorsement came to be placed on the back of the two drafts.

Hearing Committee Report

In its report, the committee noted that the evidence presented was “relatively weak and unpersuasive throughout,” as there was no direct evidence on the question |fiof who endorsed Mr. Bart’s name on the checks. The committee also pointed out that the ODC presented no forensic evidence, nor did it present any evidence of respondent’s office procedures and safeguards or the lack thereof.
Nonetheless, the committee concluded that respondent violated either Rule 1.15(b) (by failing to notify Mr. Bart that respondent had received property in which Mr. Bart had an interest) or Rule 5.3 (by failing to adequately supervise Mrs. .Allday insofar as she was being used as a courier by respondent). The committee reasoned the baseline sanction for respondent’s conduct was a public reprimand. Considering respondent’s prior discipline,[5] the commit *288 tee concluded an upward deviation from the baseline sanction was justified. Accordingly, the committee recommended respondent be suspended from the practice of law for a period of six months, fully deferred, subject to a one year period of probation with conditions.
The ODC objected to the recommended sanction as too lenient. Respondent argued that the formal charges should be dismissed.

Disciplinary Board Report

The disciplinary board concluded that respondent is guilty of violating Rule 1.15(b) for his failure to protect a third party’s interest in the Allday check, and that the misconduct was proven by clear and convincing evidence. The board also found [¿that the remainder of the formal charges were not proven by clear and convincing evidence. The board determined respondent violated duties owed to the profession, and that he engaged in grossly negligent, if not knowing, misconduct.
In light of the facts and circumstances, the board agreed with the hearing committee that a public reprimand is the baseline sanction to be imposed in this case, pursuant to the ABA’s Standards for Imposing Lawyer Discipline. As aggravating factors, the board found prior discipline, failure to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. The sole mitigating factor noted by the board was respondent’s cooperation with the disciplinary process. In light of the aggravating factors, and respondent’s prior discipline, the board concluded that an upward deviation from the baseline sanction is warranted.
Accordingly, the board recommended that respondent be suspended from the practice of law for six months, with three months deferred, followed by two years of supervised probation with conditions.[6] The board also recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to 17commence running thirty days from the date of finality of this court’s judgment until paid.
Respondent filed an objection in this court to the disciplinary board’s recommendation, and the matter was set on the court’s docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
As a threshold matter, we observe that there is no evidence in the record that respondent personally forged Mr. Bart’s endorsement on the two settlement checks. The sole issue presented is whether respondent’s actions in. supervising the *289 transmission of the checks to Mr. Bart and his handling of Mr. Bart’s purported fee interest in the settlement complied with the Rules of Professional Conduct.
Based on our review of the record, we find the ODC failed to prove by clear and convincing evidence that respondent violated Rule 1.15(b) by failing to protect Mr. Bart’s interest in the Allday settlement check. The record indicates that respondent sent Mr. Bart a form letter indicating that he would protect whatever interest in the fee Mr. Bart may have had. However, respondent’s testimony indicates that he believed he compensated Mr. Bart for his interest in the case when he paid Mi’. Bart’s outstanding costs and his $75 file opening fee at the time he obtained the case file. Although Mr. Bart later recorded his fee agreement and sent a letter to State Farm advising of his interest, he failed to notify respondent or the Alldays of these actions.
Without deciding whether Mr. Bart in fact has any interest in the Allday case, we find that under these circumstances, respondent could have reasonably concluded that Mr. Bart was not owed any fees in the matter. Moreover, we note that in light of Isthe relatively insignificant work performed by Mr. Bart in this matter, respom dent has retained a sufficient amount in his trust account to pay any claim asserted by Mr. Bart. Accordingly, we find no violation of Rule 1.15(b).
Turning to Rule 5.3(b), relating to respondent’s failure to supervise a non-lawyer, we find the ODC proved a violation of this rulé by clear and convincing evidence. Although it was somewhat unclear from Mrs. Allday’s testimony whether respondent gave her the checks to bring to Mr. Bart’s office, respondent testified unequivocally that he delegated this authority to Mrs. Allday.
Accepting respondent’s testimony as true, we conclude that respondent did not comply with Rule 5.3(b) because he failed to take reasonable steps to ensure that Mrs. Allday did, in fact, bring the checks to Mr. Bart’s office and that his endorsement was properly affixed upon the checks. Respondent admitted that allowing Mrs. Allday to take the checks to Mr. Bart’s' office was a deviation from his normal office procedures.' Respondent failed to take minimal steps to ensure that the checks were properly transmitted to Mr. Bart, such as telephoning Mr. Bart’s office to alert him that Mrs. Allday would soon be arriving.
Rule 5.3(b) mandates' that with respect to a non-lawyer employed, retained or associated by the lawyer, a lawyer must make “reasonable efforts to ensure that the person’s conduct is compatible with the professional obligations of the .lawyer.” Under these circumstances, respondent failed to make reasonable efforts to- safeguard the client settlement checks he placed under Mrs. Allday’s control. Accordingly, the ODC has proved a violation of this rule by clear and. convincing evidence.
In making a determination of the appropriate sanction for respondent’s misconduct, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of | professional conduct to safeguard the - public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
Under the facts of this case, the baseline sanction for respondent’s failure to supervise a non-lawyer would ordinarily be a public reprimand. However, respondent’s prior disciplinary record justifies an upward deviation from this baseline sanction. It is particularly noteworthy that respondent was admonished in 1994 for a violation of Rule 5.3 involving facts strik *290 ingly similar to those in the instant case.[7] Respondent’s failure to take steps to avoid a recurrence of the problem raised in the prior admonition indicates that a period of actual suspension is required. Accordingly, we will suspend respondent from the practice of law for six months, with three months of this suspension deferred, followed by two years of supervised probation subject to the conditions recommended by the disciplinary board.
DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Leonard J. Cline be suspended from the practice of law in Louisiana for a period of six months. Three months of said suspension shall be deferred, subject to the conditions recommended by the disciplinary board. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule |inXIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Calogero, C.J., not on panel, recused. Rule IV, Part II, § 3.

. Mr. Bart also filed a civil suit against respondent to recover attorney's fees and outstanding costs in the Allday matter. Morris Bart, P.L.C. v. State Farm Mut. Auto. Ins. Co. and Leonard J. Cline, No. 95-12966 on the docket of the Civil District Court for the Parish of Orleans.

. The formal charges allege respondent violated Rules 1.15(a) (failure to keep funds of a client or third person separate from the attorney's funds), 1.15(b) (failure to account for and promptly deliver funds of a client or third person), 1.15(c) (failure to segregate disputed property), 5.1 (supervisory responsibilities of a lawyer), 5.3 (responsibilities regarding non-lawyer assistants), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

. In re: Cline, 98-2319 (La. 10/28/98), 722 So.2d 984.

. Mr. and Mrs. Allday had refused to testify at an earlier committee hearing, invoking their Fifth Amendment privilege against self-incrimination. This court subsequently granted prosecutorial immunity to the Alldays at the request of the ODC, with the consent of the Attorney General and the Orleans and Jefferson Parish District Attorneys. In re: Disciplinary Proceeding No. 96-DB-042, 97-3163 (La.2/13/98) (Mr. Allday); In re: Disciplinary Proceeding No. 96-DB-042, 97-3164 (La.2/13/98) (Mrs. Allday).

. Respondent has three prior disciplinary offenses:
5/11/89 Private reprimand Failure to account for or return unearned legal fees
5/11/89 Private reprimand Failure to account for or return unearned legal fees
*288 7/5/94 Admonition (94-ADB-028) Forgery of another attorney's name on a legal pleading; respondent was admonished for failing to adequately supervise his employees in violation of Rule 5.3 of tire Rules of Professional Conduct.

. The board recommended the following conditions:
1. The probation monitor shall review all settlements occurring in Respondent’s office in which another lawyer has an interest in the costs and/or fees of the case, to . insure that Respondent is not engaging in any similar misconduct.
2. The probation monitor is to assist Respondent in preparing an appropriate written office policy to insure that similar misconduct does not occur.
3. Respondent is to take six additional hours of ethics CLE during each of the two years of probation. This six hours will be in addition to the fifteen hours already required.
4. Respondent is to cooperate completely with any and all investigations by the ■Office of Disciplinary Counsel and promptly respond to any and all complaints.
5. Respondent is to refrain from engaging in any violation of the Rules, of Professional Conduct.
6. Should the Office of Disciplinary Counsel receive any report or indication of a violation of the terms of this probation, a rule to revoke may be filed pursuant to Rule XDÍ, and if proven, Respondent shall serve the deferred portion of his suspension.

. The admonition arose from respondent's representation of Charleece Nuss, who had retained respondent after terminating her original counsel, Victor Marsiglia. Mr. Mar-siglia later received a certified copy of a motion to dismiss filed in Ms. Nuss’ case which dismissed all incidental demands, including the petition for intervention Mr. Marsiglia had filed. The motion to dismiss contained a forgery of Mr. Marsiglia’s signature. Respondent acknowledged that "someone from his office” signed Mr. Marsiglia's name to the motion, but stated that Mr. Marsiglia told him to do "whatever was necessary” to recover his expenses and fees and "just forward [him] a check.”