818 So.2d 734 (2002)
In re Robert R. FAUCHEUX, Jr.
No. 2002-B-0054.
Supreme Court of Louisiana.
May 24, 2002.
Charles B. Plattsmier, Bernadine Johnson, Baton Rouge, Counsel for Applicant.
Robert R. Faucheux, Jr., La Place, Basile J. Uddo, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary proceeding arises from three counts of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Robert E. Faucheux, Jr., an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS

Counts I & II (The Washington Matters)
In December 1991, Harold and Mona Washington retained respondent to represent them in connection with a vehicular accident involving Mrs. Washington. Respondent filed suit on behalf of his clients for personal injury and property damage against several defendants, including the Washingtons' liability and collision insurance carrier, Liberty Lloyds Insurance Company ("Liberty Lloyds"). Particularly, *735 respondent had alleged loss of consortium on behalf of Mr. Washington.
During the course of the litigation, the Washingtons began experiencing marital difficulties. Mr. Washington retained other counsel to file a petition for divorce on his behalf. Mrs. Washington asked respondent to represent her in the domestic matter. Respondent referred Mrs. Washington to another lawyer employed in his law firm, Marie Joiner Avon. However, when Ms. Avon was unable to appear at a hearing in the domestic proceeding, respondent appeared on her behalf. Subsequently, Ms. Avon moved out of town and respondent referred Mrs. Washington's domestic representation to Avinell Faucheux, another attorney employed in his office.[1]
Meanwhile, respondent continued to represent the Washingtons in the automobile accident litigation. On the day the case was set to go to trial, the parties agreed to a lump sum settlement of Mrs. Washington's personal injury damages in the amount of $64,000. This settlement did not include any award for Mr. Washington's loss of consortium claim, which respondent had not pursued.[2]
As to the property damage claim, the Louisiana Insurance Guaranty Association ("LIGA"), as receiver of Liberty Lloyds, the Washington's insurance carrier, paid $6,650 representing the fair market value of the vehicle less the deductible. This amount was insufficient to satisfy a money judgment in the amount of $12,582.32 which the lienholder, General Motors Acceptance Company ("GMAC") had obtained against Mr. Washington.[3]
Upon receiving the settlement funds, respondent notarized blank settlement documents and instructed his non-attorney employee to prepare the settlement statement and obtain the signatures of Mr. and Mrs. Washington on the documents during his absence. Although the employee prepared the settlement statements as instructed; however, unbeknown to respondent, the employee forged Mr. Washington's name on the documents.
Following the settlement disbursement, Mrs. Washington raised questions as to whether respondent properly disbursed all the funds to which she was entitled to receive from the settlement. Upon reviewing the matter, respondent conceded there may have been some errors in the calculation of the disbursement. However, he asserted any errors in this regard were offset because certain expenses, which should have been deducted from Mrs. Washington's share of the settlement, had not been deducted.[4] Dissatisfied with this explanation, Mrs. Washington filed a complaint with the ODC.
Mr. Washington filed a separate complaint with the ODC. This complaint primarily alleged respondent failed to properly protect his interests in connection with *736 the GMAC lien, resulting in garnishment of his wages.
After the filing of the complaint, respondent wrote a check to GMAC in the amount of $1,903.05, representing the balance of the judgment obtained by GMAC against Mr. Washington. Respondent also wrote a check to Mr. Washington in the amount of $4,931.89 for the total amount garnished from Mr. Washington's wages. Following these payments, Mr. Washington asked that his complaint be withdrawn, but the ODC continued to pursue it.[5]

Count III (Scott Matter)
In April 1995, Catherine Brown Scott retained respondent to represent her concerning a slip and fall accident which occurred in Texas. At that time, respondent advised his client that he was not licensed to practice law in Texas, but that he would try to handle the matter out of court. Thereafter, respondent continued to engage in settlement negotiations with the alleged tortfeasor's insurance adjuster.
Believing the prescriptive date was approaching[6] and his client was still without Texas counsel, respondent drafted a petition for personal injuries and damages on behalf of Ms. Scott, which she could file on a pro se basis in the Texas state court. Ms. Scott signed the petition in proper person; however, respondent also signed the petition to ensure defendant's counsel would continue to negotiate a settlement with him. The defendant filed its answer with the court and directed a copy to respondent, not Ms. Scott.
The suit was subsequently removed to the United States District Court for the Southern District of Texas. Shortly thereafter, defendant's counsel learned for the first time that respondent was not licensed to practice law in Texas. The defendant's counsel filed a motion to disqualify respondent, and also requested sanctions be imposed on respondent for the unauthorized practice of law. Respondent concurred in the disqualification and filed a motion to withdraw as counsel. As a result, the federal court denied the motion to disqualify as moot, but awarded sanctions in the amount of $1,000 against respondent. Subsequently, the federal court brought the matter to the attention of the ODC.

DISCIPLINARY PROCEEDINGS

Formal Charges
After investigation, the ODC instituted formal charges against respondent. As to the Washington matter, the charges alleged violations of Rules 1.2 (incompetence), 1.3 (neglect of a legal matter), 1.4 (failure to communicate with client so as to allow client's participation), 1.7 (engaging in prohibited transaction resulting in conflict of interest), 1.8(g) (improperly aggregating two clients' settlements), 1.15(c) (failure to keep client property separate until dispute resolved), 1.16(d) (failure to protect client interests at termination of representation), 5.3(b) (failure to supervise a non-lawyer employee) and 8.4(a) (professional misconduct) of the Rules of Professional Conduct, as well as Supreme Court Rule XIX, § 28 (failure to maintain trust account). With regard to the Scott matter, the ODC alleged violations of Rules 3.4(c) (knowingly disobey tribunal orders), 5.5(a) (engaging in the unauthorized practice of law), 8.3(a) (failure to report professional misconduct), 8.4(a) (professional misconduct) and 8.4(d) (engaging in conduct *737 prejudicial to the administration of justice), as well as Supreme Court Rule XIX, § 9(a) and (b) (violating rules of professional conduct of another jurisdiction).
In response to each of the counts of misconduct, respondent filed a general denial of the allegations. Accordingly, the matter was scheduled for formal hearing.

Hearing Committee Recommendation
Following the formal hearing, the hearing committee rendered its written findings and recommendation concluding there was only clear and convincing evidence to support Count I of the formal charges relating to Mr. Washington's complaint. Specifically, it found respondent violated Rule 1.4 by failing to properly communicate with Mr. Washington and keep him reasonably informed regarding the matter. Moreover, the committee determined respondent violated the conflict of interest provisions of Rule 1.7(a) by directing an attorney employed by him (Ms. Faucheux) to represent Mrs. Washington in the divorce proceeding, while respondent continued to represent Mr. Washington in the personal injury litigation. The committee found that, under these circumstances, respondent should have advised Mr. Washington of the potential for a conflict of interest and obtained a waiver from him. The committee also concluded respondent violated Rule 1.8(g) (improperly aggregating two clients' settlements) by entering into an aggregate settlement of Mr. and Mrs. Washington's claims without prior consultation with, and consent of, Mr. Washington.
The committee also found respondent violated Rule 5.3(b) by failing to supervise his non-lawyer employee, which resulted in the forgery of Mr. Washington's signature on the settlement documents. Although it recognized respondent neither participated in, nor knew of the forgery, it concluded he violated Rule 8.4 (engaging in conduct prejudicial to the administration of justice) by notarizing the settlement documents in blank. The committee also found respondent violated this provision by seeking to have Mr. Washington dismiss his complaint as a condition of restitution.[7]
With regard to Mrs. Washington's complaint, the committee found the ODC failed to prove the allegations by clear and convincing evidence. Specifically, the committee determined there was insufficient evidence to support the allegations that all expenses deducted from Mrs. Washington's settlement proceeds were not paid to the appropriate parties.
As to Count III, the committee also concluded there was insufficient evidence that respondent had engaged in the unauthorized practice of law. It recognized that the petition for damages filed in the Texas court was contemplated and prepared as a pro se complaint by Ms. Scott. While it determined it was "unorthodox (and risky)" for respondent to affix his signature on the complaint just to assure his participation in the settlement negotiations, it found respondent's assistance to Ms. Scott in pursuing her pro se complaint was "(understandably) misinterpreted."
In addressing the issue of sanctions, the committee found respondent's actions were negligent. While there was no direct pecuniary harm to those involved, Mr. Washington's confidence was shaken and he was confused about his rights and the process, thus, resulting in harm to the disciplinary system. The committee determined the baseline sanction for this conduct was suspension.
*738 The sole aggravating factor recognized by the committee was respondent's substantial experience in the practice of law.[8] In mitigation, it recognized respondent's absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems,[9] timely good faith effort to make restitution or to rectify the consequences of his misconduct, full and free disclosure and cooperative attitude toward the proceedings and remorse.
Considering these factors, the committee recommended respondent be suspended from the practice of law for a period of two years, deferred in full, subject to a two year period of probation with numerous conditions.

Disciplinary Board Recommendation
The disciplinary board accepted the committee's findings of fact, with the exception of the finding that respondent's actions were negligent. Instead, the board found respondent's conduct was, at the very least, knowing.
As to the issue of sanctions, the board determined respondent violated duties owed to his clients, to the legal system and the profession. The board expressed concern over respondent's "cavalier" attitude towards his client, Mr. Washington, and the fact that he did not vigorously protect Mr. Washington's interests. Like the committee, it found that Mr. Washington's confidence was shaken and he was confused about his rights and involvement in the process, resulting in harm to the disciplinary system. Moreover, while it found there was no actual harm to his client, there was great potential for such harm.
The board adopted the aggravating and mitigating factors cited by the committee. As a sanction, it recommended respondent be suspended for a period of one year, with six months deferred, followed by a one year period of probation with specified conditions. One board member filed a dissent without assigning reasons.
Respondent filed an objection to the board's recommendation. Accordingly, the matter was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
*739 The record supports the hearing committee's findings that the ODC proved by clear and convincing evidence that respondent failed to communicate with Mr. Washington. It is undisputed that respondent did not keep Mr. Washington informed about the status of his case and, as a result, Mr. Washington was confused about the proceeding. While Mr. Washington's loss of consortium claim may have been of questionable value in light of his divorce from Mrs. Washington, the fact remains that respondent had a professional obligation to communicate with Mr. Washington and provide him sufficient information to make informed decisions regarding the litigation.
We also find the ODC proved by clear and convincing evidence that respondent created a conflict of interest when he directed an attorney with which he was associated to represent Mrs. Washington in the domestic proceeding while he continued to represent Mr. Washington in the automobile accident case. Rule 1.7(a) provides:
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) Each client consents after consultation.
Clearly, the interests of Mr. and Mrs. Washington became directly adverse upon the filing of the divorce petition. Under these circumstances, respondent could not reasonably believe that representation of Mrs. Washington in the domestic case would not adversely affect his representation of Mr. Washington in the personal injury litigation case.
Respondent apparently recognized that it would be a clear conflict for him to represent Mrs. Washington in the domestic litigation under these circumstances, and sought to eliminate the conflict by referring Mrs. Washington's domestic case to his associate attorney, Ms. Faucheux. However, Rule 1.10(a) specifically provides:
(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2.
Therefore, the only way for respondent to continue the dual representation would be for him to have obtained a waiver of conflict from both Mr. and Mrs. Washington. It is undisputed that respondent failed to do so.
Similarly, respondent violated Rule 1.8(g) when he participated in an aggregate settlement of the Washingtons' automobile accident case without obtaining their consent to the aggregate settlement after appropriate consultation. As noted previously, Mr. Washington's consortium claim probably had little value, but respondent had a professional obligation to provide full information to Mr. Washington prior to advising him to enter into the settlement.
We also find the ODC produced clear and convincing evidence that respondent violated Rules 5.3 and 8.4 by failing to supervise his non-lawyer employee, resulting in the forgery of Mr. Washington's name on the settlement documents. While it is undisputed that respondent was not aware of the forgery, Rule 5.3 mandates that the lawyer make reasonable efforts to ensure that the non-lawyer employee's conduct is compatible with the professional obligations of the lawyer. In re: Cline, 99-2779 (La.2/29/00), 756 So.2d 284. Respondent made no reasonable efforts to *740 ensure proper conduct on the part of his non-lawyer employee; indeed, by notarizing the settlements in blank, he created the potential for mischief.
As to the remaining counts, we see no error in the committee's conclusion that the ODC failed to prove these allegations by clear and convincing evidence. We believe the allegations of unauthorized practice of law present a very close case, especially in light of the sanctions imposed by the Texas court. However, because this issue is inherently factual, we decline to find the committee was clearly wrong when it concluded the ODC did not prove the allegations of the unauthorized practice of law.
Having found professional violations, we now turn to the appropriate sanction for respondent's misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
While respondent's misconduct did not cause any actual injury to his clients, there was a potential for injury. Under these circumstances, Standard 7.2 of the ABA's Standards for Imposing Lawyer Sanctions sets a baseline sanction of suspension.[10]
As mitigating factors, we recognize respondent's absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, timely good faith effort to make restitution or to rectify the consequences of his misconduct, full and free disclosure and cooperative attitude toward the proceedings and remorse. The sole aggravating factor apparent from the record is respondent's substantial experience in the practice of law.
Considering all the facts, we find a six-month suspension from the practice of law is the appropriate sanction. In light of the mitigating factors, we will defer this suspension in its entirety, and place respondent on supervised probation for a period of one year, subject to the following conditions:
1. A practice monitor shall be appointed by the ODC to supervise respondent's law office practice;
2. With the practice monitor's assistance, respondent shall develop and implement law office policies and/or practice guidelines for himself and his office staff;
3. Respondent shall submit evidence to the ODC indicating the $1,000 sanction imposed by the United States District Court for the Southern District of Texas has been satisfied;
4. During the period of probation, respondent shall complete six hours of continuing legal education in the area of law office management, in addition to his *741 regular mandatory continuing legal education requirements; and
5. In the event respondent fails to comply with these conditions or engages in any misconduct during the period of probation, the deferred period of the suspension shall become executory upon motion to this court by the ODC.

DECREE
For the reasons assigned, it is ordered that Robert R. Faucheux, Jr. be suspended from the practice of law for a period of six months. It is further ordered the suspension be fully deferred and that respondent be placed on supervised probation for a period of one year, subject to the conditions set forth in this opinion. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Ms. Faucheux is not related to respondent.
[2] Based on respondent's failure to pursue this claim, the opposing counsel had previously filed a motion to strike any damages for loss of consortium requested by Mr. Washington, which the trial court granted. Respondent later testified he believed Mr. Washington's claim for loss of consortium had little value in light of the Washingtons' subsequent divorce. As a result, he did not pursue the claim.
[3] GMAC had instituted garnishment proceedings against Mr. Washington to satisfy the money judgment it had previously obtained against him. Respondent had mistakenly believed that GMAC would accept the $6,085.97 paid by the insurer in full satisfaction of this claim.
[4] Specifically, respondent contended that he paid $7,839.62 in expenses during the litigation but had failed to recover this amount from the Washingtons.
[5] Respondent informed the ODC that he was aware that Mr. Washington intended to withdraw the complaint, but specifically denied that he advised Mr. Washington to do so.
[6] Respondent was under the mistaken impression that Texas law provided for a one year prescriptive period for instituting a personal injury suit.
[7] The committee noted that it was irrelevant whether the request to dismiss the complaint on the basis of restitution was explicit or not. It found it was clearly implicit based on the record.
[8] Respondent was admitted to the practice of law in 1975 and, thus, practicing for approximately 20 years at the time of the misconduct.
[9] At the formal hearing, respondent testified and presented documentary evidence to support his claims in mitigation that, during the time of the misconduct, he was involved in a prolonged child custody and visitation dispute with his former wife, as well as suffered from bouts of depression. The hearing committee had specifically placed this evidence under seal pursuant to the joint motion of respondent and the ODC. At oral argument, we questioned whether the parties sustained their burden under Supreme Court Rule XIX, § 16(d) to have the evidence placed under seal. At that time, respondent agreed to allow the evidence to be made public.
[10] Standard 7.2 provides a "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes serious or potentially serious injury to a client, the public, or the legal system."