LORAIN COUNTY BAR ASSOCIATION *v.* NOLL.

[Cite as *Lorain Cty. Bar Assn. v. Noll,* 105 Ohio St.3d 6, 2004-Ohio-7013.]

*Attorneys at law — Misconduct — Two-year suspension, one year stayed on conditions — Neglecting entrusted legal matters — Engaging in conduct adversely reflecting on fitness to practice law.*

(No. 2004-1059 — Submitted October 13, 2004 — Decided December 29, 2004.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 03-092.

_____

**Per Curiam**.

{¶ 1}  Respondent, Carl F. Noll of Elyria, Ohio, Attorney Registration No. 0023386, was admitted to the Ohio bar in 1974.

{¶ 2}  Relator, Lorain County Bar Association, alleges that the respondent has committed one violation of DR 1-102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law) and three violations of DR 6-101(A)(3) (barring attorneys from neglecting legal matters entrusted to them). The alleged violations are related to respondent's failure to pursue civil claims on behalf of clients who had been injured in automobile accidents and his failure to supervise his legal assistant.

{¶ 3}  Mary Lengyel of Wakeman, Ohio, was involved in an automobile accident in 1998.  In June 1999, she asked respondent to represent her in connection with that accident.  After his initial meeting with Lengyel, respondent did no work on her case, though his secretary did send a letter requesting Lengyel's medical records.  Respondent did not return Lengyel's many telephone calls and in fact could not recall ever meeting or communicating directly with her about the automobile accident.  After trying repeatedly for months to speak with

respondent, Lengyel finally contacted another attorney in January 2002. That attorney investigated the matter and learned that respondent had never filed a lawsuit on Lengyel's behalf.

{¶ 4} Lengyel then filed a grievance with relator, as well as a malpractice lawsuit against respondent. The lawsuit alleged that respondent had entered into a contingent-fee contract to represent Lengyel and had negligently failed to take legal action on her behalf before the limitations period lapsed. Respondent settled with Lengyel in 2003.

{¶ 5} Amy Tomko, from LaGrange, Ohio, was involved in an automobile accident in 2000 and asked respondent to represent her. In April 2002, respondent filed a lawsuit on Tomko's behalf, but it was eventually dismissed by the trial court because the defendant was never properly served with a copy of the complaint. Tomko then filed a grievance with relator, alleging that respondent had not returned her telephone calls and had somehow lost or destroyed the file for her case.

{¶ 6} Candelaria Rodriguez, from Lorain, Ohio, was involved in an automobile accident in 1998. She met with respondent in 2000 and asked him to represent her. Respondent filed a lawsuit on Rodriguez's behalf that same year, but he did not attend any court hearings, and the case was dismissed in 2001 by the trial court for want of prosecution. Respondent never told Rodriguez about the dismissal. Rodriguez filed a grievance against respondent with relator in 2003.

{¶ 7} From the early 1990s until May 2003, Juanita Castro worked as respondent's legal secretary and legal assistant. She paid bills for respondent's law office, answered telephone calls, opened mail, maintained respondent's appointment calendar, scheduled client appointments, and drafted pleadings and correspondence for respondent's review.

**{¶ 8}** When relator pursued disciplinary charges against respondent in connection with the grievances filed by Mary Lengyel, Amy Tomko, and Candelaria Rodriguez, respondent explained that Juanita Castro had misplaced or destroyed files in his office, thereby preventing him from properly attending to the clients' interests. He also claimed that Castro failed to follow his instructions and failed to tell him about the status of court cases filed by his office. Respondent said that he found "piles and piles and piles" of important papers hidden in his law office in May 2003 after Castro's departure.

**{¶ 9}** A panel of the Board of Commissioners on Grievances and Discipline heard testimony in March 2004. Based on the testimony and exhibits presented at the hearing, the panel found that respondent had neglected legal matters entrusted to him by Lengyel, Tomko, and Rodriguez — all in violation of DR 6-101(A)(3) — and also found that he had violated DR 1-102(A)(6) by failing to properly supervise Castro, his long-time legal assistant. The panel concluded that other charges — including allegations that respondent had engaged in conduct involving dishonesty or fraud and that he had failed to cooperate in the disciplinary process — had not been proven by clear and convincing evidence, and those charges were dismissed.

**{¶ 10}** In recommending a sanction for the misconduct, the panel considered the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Among the relevant aggravating factors, the panel found that respondent was unapologetic about his failures and was more concerned about Castro's departure than about the harm done to his clients. BCGD Proc.Reg. 10(B)(1)(g). The panel also found that respondent did not recognize that he should have answered Lengyel's telephone and e-mail inquiries about the status of her case. Also, according to the panel, respondent's failure to prosecute

his clients' civil lawsuits probably harmed them economically. BCGD Proc.Reg. 10(B)(1)(h).

{¶ 11} On the mitigating side of the equation, the panel noted that respondent had no prior disciplinary record, BCGD Proc.Reg. 10(B)(2)(a), and he had generally been cooperative with the disciplinary process, BCGD Proc.Reg. 10(B)(2)(d). Also, respondent submitted eight letters from supporters attesting to his good character, and he had been active in community and bar association activities. BCGD Proc.Reg. 10(B)(2)(e).

{¶ 12} The panel recommended that respondent be suspended from the practice of law for six months. The board agreed with the panel's factual findings, but recommended that respondent be suspended for one year, with six months of that suspension stayed.

{¶ 13} Respondent has filed objections to the board's recommendation, and relator has responded to those objections. After reviewing the matter and after hearing oral argument, we find that respondent did indeed commit the misconduct found by the board. We do not agree, however, with the sanction recommended by the board.

{¶ 14} Respondent failed to devote the necessary time and attention to the legal needs of all three of the clients who filed grievances against him. For one, he filed no lawsuit at all, and for the other two, he filed lawsuits but did not prosecute them, resulting in their involuntary dismissal. He certainly did not offer his clients the competence and diligence that they deserved and did not pursue his clients' lawful objectives as expeditiously and economically as possible.

{¶ 15} The Lawyer's Creed issued by this court in 1997 encourages all Ohio lawyers to make this pledge to their clients: "I shall represent you as I should want to be represented and be worthy of your trust." Respondent fell far short of that standard in his handling of the legal matters brought to him by Lengyel, Tomko, and Rodriguez. He allowed their files to be lost or destroyed by

4

his legal assistant, he was inattentive to all three clients' requests for information, and he did not move aggressively to remedy the problem or to restore the trust of his clients after he learned of their legitimate concerns. The panel's findings on each of the three alleged DR 6-101(A)(3) violations are well supported by the record.

{¶ 16} The same is true of the panel's finding on the DR 1-102(A)(6) violation. Respondent's failure to adequately supervise his legal assistant led to many of his problems, and that failure adversely reflects on respondent's fitness to practice law. "[I]t is a lawyer's duty to establish a system of office procedure that ensures delegated legal duties are completed properly." *Disciplinary Counsel v. Ball* (1993), 67 Ohio St.3d 401, 404, 618 N.E.2d 159. Whatever safeguards respondent may have established to ensure that Juanita Castro performed her assigned duties properly were clearly inadequate.

{¶ 17} The Restatement of the Law Governing Lawyers 3d (2004), Section 11, states:

{¶ 18} "(4) With respect to a nonlawyer employee of a law firm, the lawyer is subject to professional discipline if * * *:

{¶ 19} "(a) the lawyer fails to make reasonable efforts to ensure:

{¶ 20} "(i) that the firm in which the lawyer practices has in effect measures giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer; and

{¶ 21} "(ii) that conduct of a nonlawyer over whom the lawyer has direct supervisory authority is compatible with the professional obligations of the lawyer."

{¶ 22} Comment *c* to Section 11 adds:

{¶ 23} "Lack of awareness of misconduct by another person, either lawyer or nonlawyer, under the lawyer's supervision does not excuse a violation of this Section.

**{¶ 24}** Comment *f* states, "The fact that a lawyer is busy or distracted in other critically important work, such as the work of providing legal services to clients or generating a high percentage of the firm's fee revenue, does not excuse neglecting supervisory responsibilities or ignoring inappropriate conduct on the part of a supervised nonlawyer."

**{¶ 25}** Respondent's conduct fell below that standard. He admitted that he was oblivious to his assistant's shoddy work, and his inattentive and inadequate oversight of that assistant led respondent to neglect the legal needs of his clients. Respondent continued to employ his assistant long after he knew or should have known that her handling of his mail, telephone messages, calendar, and client files was damaging his law practice and jeopardizing the rights and interests of his clients. The board therefore rightly found that respondent's misconduct violated DR 1-102(A)(6), which bars attorneys from engaging in actions that adversely reflect on the lawyer's fitness to practice law.

**{¶ 26}** Troubling as well is the fact that respondent and Juanita Castro were involved in a romantic relationship that appears to have clouded respondent's judgment about the need for changes in his office procedures. According to Castro, that relationship lasted for "six years or so," and respondent's own statements support that testimony. Though respondent denies that the relationship affected his ability to manage his law office, he continued to give Castro considerable leeway to oversee the flow of paperwork and information in the office when her job performance had clearly fallen below professional standards. Respondent's decision to maintain a romantic relationship with Castro and to keep her in his employ during the years when her negligence was adversely affecting his clients casts doubt on his claim that the relationship played no role in his refusal to terminate Castro or to implement changes in office procedures.

**{¶ 27}** The situation is similar to the one we addressed in *Disciplinary Counsel v. Kick* (1986), 28 Ohio St.3d 91, 28 OBR 187, 502 N.E.2d 640, in which an attorney who was personally involved with a secretary was disciplined for failing to maintain accurate records in his office and for failing to oversee client funds properly. The attorney in that case had given significant responsibilities to the secretary and then had not monitored her work. Both that case and this one should serve as a warning for other professionals about the perils of maintaining a close social relationship with a subordinate in an office setting and the potential it creates for conflict and harm to clients. The interests of the lawyer's clients – not the lawyer's own personal interests – must always come first. A lawyer must be vigilant at all times in protecting the welfare of clients.

**{¶ 28}** We conclude that a more severe sanction than the one recommended by the board is warranted. Though respondent has never been disciplined before, and though a number of witnesses and supporters have attested to his good character, his pattern of misconduct and his refusal or inability to address the problems in his office prompt us to impose that more serious sanction.

**{¶ 29}** Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years. Eighteen months of that suspension will be stayed, provided that these conditions are met: (1) respondent must attend at least six hours of continuing legal education classes on effective office management during the first six months of his suspension, (2) the relator must appoint a monitor and that monitor must use his or her best efforts to monitor respondent's law practice during the stayed portion of respondent's suspension, (3) respondent must cooperate with that monitor and meet regularly with him or her during the stayed portion of the suspension period, and (4) respondent must comply with the continuing legal education requirements of Gov.Bar R. X.

**{¶ 30}** Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

————————————

Wickens, Herzer, Panza, Cook & Batista and Daniel A. Cook, for relator.

Mary L. Cibella, for respondent.

————————————