RICHLAND COUNTY BAR ASSOCIATION, *v.* AKERS.

[Cite as *Richland Cty. Bar Assn. v. Akers,*
106 Ohio St.3d 337, 2005-Ohio-5144.]

(No. 2005–0382—Submitted April 13, 2005—Decided October 12, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Eric Jonathan Akers of Ashland, Ohio, Attorney Registration No. 0019706, was admitted to the Ohio bar in 1973.

{¶ 2} On November 1, 2004, relator, the Richland County Bar Association, filed an amended complaint charging respondent with six counts of professional misconduct. Respondent answered, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing and made findings of fact and conclusions of law, which the board adopted. The panel also recommended a sanction for the misconduct, which the board modified.

### Misconduct

{¶ 3} Respondent practiced law in Plymouth, Ohio until 1982, when he announced the closure of his Plymouth office to devote most of his time to teaching in Ashland, Ohio. He did not, however, close his law office's post office box or arrange for the forwarding of any mail sent to that box. After respondent closed his Plymouth law office, he allowed his former secretary, Janet Jones, to continue to use the post office box. She operated a bookkeeping and tax preparation

business under the name "Professional Services" near the site of the former law office. Jones is not a lawyer.

{¶ 4} In 1987, with respondent's permission, Jones erected a sign in front of her place of business, which read, "Eric Akers, Attorney at Law." Respondent occasionally practiced law at this location. One and one-half years later, after respondent stopped meeting with clients in Plymouth, he asked Jones to remove the sign. She did so, but respondent did not close the post office box or take other steps to eliminate potential client confusion concerning the ties between "Professional Services" and his former law office.

## Count One

{¶ 5} On an occasional basis after 1987, except for the years 1990 through 1995, respondent reviewed and approved legal documents prepared by Jones for persons who had never met with or talked to respondent. Respondent would tell Jones how much to bill each client, and then Jones would collect the fee from the client, deduct an amount equal to $30 per hour for her services, and pay the balance to respondent. Generally, respondent did not review or even see the bill before it was sent to the client and did not see the client's check or cash sent in payment for any legal services rendered. In some instances, clients were billed under the name "Eric Akers, Attorney at Law."

{¶ 6} Respondent admitted and the board found that he had thereby violated DR 3–102(A) (prohibiting a lawyer from sharing legal fees with a nonlawyer).

## Count Two

{¶ 7} Jones served as the guardian for Vera E. Sourwine in a probate matter in Richland County. Respondent served as Jones's lawyer in the case.

{¶ 8} Respondent allowed Jones to sign his name on an application to terminate the guardianship in 1997 without advising the probate court that she was signing for him. Also, Jones was required to file monthly reports with the probate court concerning the condition of her ward, and she stated on those reports each month that she was a "Paralegal to Attorney Eric J. Akers." Respondent was unaware that Jones was representing herself as his paralegal, but he did allow her to use his law office's former post office box, which enabled her to intercept correspondence from the probate court that was intended for him.

{¶ 9} Respondent admitted and the board found that he had thereby violated DR 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law).

## Count Three

{¶ 10} After Vera Sourwine died in 1997, respondent signed and filed an application to probate her will on which he listed his address as the post office box that he had used until 1982, when he had originally closed his law office in Plymouth. Respondent also signed and filed an application for authority to administer the Sourwine estate in 1997, listing the post office box as his address and the telephone number for Jones's office as his telephone number. Jones received approximately $200,000 from the Sourwine estate, and respondent's actions placed her in a position to intercept any communications from the Sourwine heirs. Respondent later allowed Jones to sign his name as attorney for the estate on three documents filed with the probate court without disclosing to the court that someone had signed the documents for him.

{¶ 11} Respondent admitted and the board found that he had thereby violated DR 1–102(A)(6).

## Count Four

{¶ 12} Respondent represented the estate of Ida E. Fast in the probate court in Huron County in 1987. The pleadings that he filed in the case correctly listed his address as the post office box in Plymouth. By using that address on the pleadings, however, respondent placed Jones, who was not then his employee, in a position to intercept any communications from the heirs of the estate. Respondent also allowed Jones to sign his name as attorney for the estate on documents filed with the probate court in Huron County without disclosing to the court that someone had signed the documents for him.

{¶ 13} Respondent admitted and the board found that he had thereby violated DR 1–102(A)(6).

## Count Five

{¶ 14} At the request of Jones, respondent intervened in a probate matter involving the estate of H. Joan Ruckman in the probate court in Richland County in 1997. Jones was the executor of the estate.

{¶ 15} Respondent authorized Jones to sign his name to a pleading filed in the case that listed his address as the post office box in Plymouth even though he had stopped using that box in connection with his law practice. Only Jones was receiving mail at that address in 1997 and 1998, when respondent performed work on the Ruckman matter. Respondent also allowed Jones to sign his name as attorney for the estate on a document filed with the probate court in Richland County without disclosing to the court that someone had signed the document for him.

{¶ 16} Respondent admitted and the board found that he had thereby violated DR 1–102(A)(6).

### Count Six

{¶ 17} Mary Leora Kuhn Chandar and her husband, Ram Chandar, owned a substantial amount of real estate near Shelby, Ohio. The Chandars had been cared for by Marguerite Wilcox for years under a power-of-attorney document that they had executed.

{¶ 18} In October 1999, respondent authorized Jones to sign his name to a letter addressed to Marguerite Wilcox indicating that he represented the Chandars. Enclosed with that letter was a notice of revocation of the power of attorney. The letter directed Wilcox to deliver all personal documents and all other personal items to Mrs. Chandar immediately.

{¶ 19} The letter listed an address for respondent that matched Jones's address, and it also listed the post office box in Plymouth that respondent had used before he closed his law office in 1982. The letter began, "This office represents Mr. and Mrs. Chandar of Sidney, Ohio."

{¶ 20} Respondent met with the Chandars and assisted them in terminating all ties with Wilcox. Respondent knew that Jones would be taking the place of Wilcox as personal caretaker of the Chandars when they executed a new power of attorney giving Jones that authority.

{¶ 21} After Mrs. Chandar died, Jones prepared deeds for Mr. Chandar to sign, giving all of his real estate to her. Jones included respondent's name on the deeds as the attorney who had prepared them and also listed the post office box address that she had continued to use after respondent closed his law office in 1982. Chandar's land was worth more than $300,000. Jones also signed respondent's name as her representative on a conveyance form for the gift of Chandar's property to her.

{¶ 22} Respondent admitted and the board found that he had thereby violated DR 1–102(A)(6).

### Sanction

{¶ 23} In recommending a sanction for respondent's misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board cited no aggravating factors in connection with respondent's actions.

{¶ 24} The board did note several mitigating factors, including the absence of any prior disciplinary record, the absence of a dishonest or selfish motive, a cooperative attitude toward the proceedings, and support for respondent's good

character and reputation from attorneys, professors, public officials, and others. BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e).

{¶ 25} The panel recommended that respondent be suspended from the practice of law for 18 months, with the entire suspension stayed. The board modified this recommendation, finding that respondent should be suspended from the practice of law for 18 months, with 12 months of the suspension stayed.

{¶ 26} We agree with the board that respondent committed five violations of DR 1–102(A)(6) by engaging in conduct that adversely reflected on his fitness to practice law, as well as one violation of 3–102(A) by sharing legal fees with a nonlawyer. We also agree with the sanction recommended by the board. Respondent allowed his former secretary to present his address as his own for many years after he stopped receiving mail at that address. He thereby allowed her to intercept any incoming mail or telephone calls from courts, clients, and other lawyers. Through his willful ignorance, that former secretary enriched herself by more than $300,000, as described in our discussion of count six. Respondent also repeatedly allowed the former secretary to sign his name to pleadings without indicating to courts or others that he had done so.

{¶ 27} Respondent's actions reflect poorly on the legal profession and on his fitness to practice that profession. He allowed his former secretary to take actions in his name without effectively overseeing those actions, and he failed to give his clients the competence, diligence, and good judgment that they deserved. Lawyers cannot practice law in absentia. They must instead understand that their actions affect the public's perception of the legal system and our system of justice as a whole.

{¶ 28} The penalty recommended by the board is warranted for respondent's misconduct. Accordingly, respondent is hereby suspended from the practice of law in Ohio for a period of 18 months, with 12 months of the suspension stayed on the condition that respondent commit no further misconduct during the 18–month suspension period. If respondent commits other acts of misconduct, the stay will be lifted, and respondent will serve the entire term as an actual suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

O'CONNOR, J., dissents.

———————

**O'CONNOR, J., dissenting.**

{¶ 29} I respectfully dissent from the majority's imposition of an 18–month suspension with 12 months stayed.

{¶ 30} Respondent established a pattern of neglect and misconduct that facilitated his former secretary's ability to enrich herself, and together, respondent and his former secretary perpetrated fraud upon various courts, the public, and clients. Respondent received fees through the arrangement that he had with his former secretary and thereby benefited from the improper conduct. Respondent permitted her to sign his name to court-filed documents without indicating to the court that he was not the signatory.

{¶ 31} Respondent also acquiesced in an arrangement that indicated to the public (and clients) that he was a practicing attorney when he was not. Respondent facilitated his former secretary's preparation of legal documents, billing clients for the work and allowing clients to think that he, a lawyer, had performed the professional service.

{¶ 32} I would impose an unstayed suspension from the practice of law of 18 months.

---

Eric S. Miller, for relator.

Kegler Brown Hill & Ritter Co., L.P.A., and Geoffrey Stern, for respondent.