MAHONING COUNTY BAR ASSOCIATION ET AL. *v*. LAVELLE.

[Cite as *Mahoning Cty. Bar Assn. v. Lavelle,*
107 Ohio St.3d 92, 2005-Ohio-5976.]

(No. 2004–2159—Submitted March 29, 2005—Decided November 23, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Mark Joseph Lavelle of Youngstown, Ohio, Attorney Registration No. 0061904, was admitted to the Ohio bar in 1993.

{¶ 2} On May 14, 2004, relators—Mahoning County Bar Association and Disciplinary Counsel—filed an amended complaint charging respondent with two counts of professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline held a hearing and made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

### Count One

{¶ 3} Gloria Lynn Short retained respondent in October 2002 to represent her in a domestic-relations matter. She met with respondent, discussed her interest in obtaining a dissolution of her marriage, and received paperwork from respondent that she and her husband were to complete.

{¶ 4} Two weeks later, Short and her husband returned to respondent's law office and met with his secretary, Pamela Rodriguez. They reviewed and signed paperwork that Rodriguez had typed. Thereafter, Short called respondent's law office weekly to find out when her dissolution hearing would be held. Rodriguez assured her that the case was pending and a hearing would be scheduled, but in fact neither respondent nor anyone else in his office had ever filed the dissolution pleadings in court. In May 2003, Short hired a different lawyer and secured a dissolution by July of that year.

{¶ 5} Short filed a grievance against respondent in May 2003. The bar association sent a letter and a copy of the grievance to respondent in May 2003 and asked that he respond within 15 days. Respondent did not do so and likewise did not reply to two additional letters sent to him by a member of the bar association in June and July 2003. After respondent received a fourth letter from the bar association in August 2003, he called the bar association's investigator, scheduled an interview, and prepared a written response to the grievance.

{¶ 6} At his August 2003 interview and in his written response to the grievance, respondent told the investigator that he could not find his file and was not certain what had happened with Short's case. He indicated that he learned in May 2003 that Short's dissolution pleadings had never been filed by his office.

{¶ 7} The board found that respondent had thereby violated DR 6–101(A)(3) (barring an attorney from neglecting an entrusted legal matter). Other allegations against respondent in the amended complaint had not been proven by clear and convincing evidence, according to the board, including an allegation that respondent had tried to hide his misconduct by providing a misleading story to the bar association's investigator.

### Count Two

{¶ 8} Respondent met with Brian and Lori Cupp concerning a domestic-relations matter in 2002. Respondent prepared a summons, an affidavit, financial disclosure forms, and a proposed judgment entry granting Cupp and his wife a dissolution. Brian never paid the agreed retainer in full, and respondent never filed a petition for dissolution or any other documents with the common pleas court to initiate the case.

{¶ 9} During respondent's representation of Brian Cupp, persons employed in respondent's law office altered documents or falsely notarized them. The affidavit prepared by respondent for the case purports to bear the signatures of both Cupp and his wife, Lori Cupp, with one notary verification. The jurat on the affidavit states that it was signed in the presence of the notary on December 10, 2002, but Lori did not in fact sign it that day. The notary on the document was Gregory Lavelle, the respondent's brother, who is not an attorney but was employed in respondent's law office to assist him on personal-injury and domestic-relations matters. Respondent's secretary, Pamela Rodriguez, changed the date on the affidavit using whiteout correction fluid and added the December 10, 2002 date in place of the date when Lori actually signed the affidavit.

{¶ 10} Rodriguez also altered the signature page on a copy of the Cupps' separation agreement that she gave to Lori to make it appear as if Lori had signed that document on December 10, 2002. Lori did not sign the document that day. Also, respondent is listed as the notary for Brian Cupp's signature on the separation agreement, but by his own admission, respondent did not see Cupp sign the document and did not sign the document himself next to the "Mark Lavelle, Attorney at Law" notarial stamp.

{¶ 11} In addition, Rodriguez used whiteout correction fluid to alter two dates on a copy of the parties' petition for dissolution that she gave to Lori. Rodriguez also faxed a series of documents to a mortgage company in February 2003 listing case numbers for the Cupp dissolution, thereby purporting to show that respondent's law office had filed the Cupp dissolution petition. The case numbers were fictitious; the dissolution petition had not been filed. One of the documents that Rodriguez sent to the mortgage company contained a fictitious file stamp from the common pleas court, a fictitious case number, and the name of a judge on the first page.

{¶ 12} Lori Cupp retained her own attorney in early 2003, and that attorney filed a complaint for divorce on Lori's behalf in April 2003. Lori filed a grievance against respondent in May 2003.

{¶ 13} After examining respondent's alleged misconduct in connection with the Cupp case, the board found no clear and convincing evidence that he had committed any violations of the Code of Professional Responsibility.

## Recommended Sanction

{¶ 14} In recommending a sanction for respondent's misconduct in Count One, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board cited no aggravating factors in connection with respon-

dent's actions. The board did note several mitigating factors, including the absence of any prior disciplinary record, the absence of a dishonest or selfish motive, a cooperative attitude during the proceedings once respondent replied to the grievances, and support for respondent's good character and reputation from judges, attorneys, and others. BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e).

{¶ 15} The panel recommended that respondent be suspended from the practice of law for six months, with the entire suspension stayed on conditions. The board accepted this recommendation.

## Review of the Board's Report

{¶ 16} We agree with the board that respondent violated DR 6–101(A)(3) by neglecting a legal matter entrusted to him by Gloria Short. Unlike the board, we find clear and convincing evidence in the record that respondent also violated Gov.Bar R. V(4)(G) in connection with the Short case. Gov.Bar R. V(4)(G) requires attorneys to cooperate with and assist in any disciplinary investigation, and even though respondent eventually did cooperate with the investigation, he ignored for three months the Short grievance and the bar association's efforts to investigate it.

{¶ 17} The bar association sent a letter and a copy of the Short grievance to respondent on May 20, 2003, asking that he respond within 15 days. When respondent did not do so, the bar association's assigned investigator sent a second letter on June 17, 2003, asking for a response. A third letter was sent to respondent on July 1, 2003. Respondent never replied to any of those letters, even though—according to his own testimony before the panel—he received them all. All three of the letters cited Gov.Bar R. V(4)(G) and stressed respondent's obligation to cooperate in the bar association's investigation. Yet not until after the bar association's investigator sent a fourth letter to respondent on August 5, 2003, did respondent finally reply to the grievance through a letter dated August 19, 2003.

{¶ 18} Respondent's tardiness in responding to the grievance is inexcusable for a member of the legal profession. His lack of diligence and his blatant disregard of the deadlines set by the bar association for replying to the Short grievance showed a lack of respect for the grievance-investigation process and a lack of courtesy for his fellow bar members in Mahoning County. A lawyer accused of misconduct by a client owes that client and any investigating authorities a complete and timely response. Anything less reflects poorly on our system of justice and the legal profession. We find that respondent violated Gov.Bar R. V(4)(G) by waiting three months to respond to the Short grievance.

{¶ 19} With respect to Count Two, involving the Cupp matter, we disagree with the board's finding that respondent committed no misconduct. He failed to

adequately supervise his secretary Pamela Rodriguez. Respondent's inattention created an office environment that allowed Rodriguez to place false information on documents and provide misleading information to a mortgage company. And Rodriguez or someone else in his office evidently forged respondent's signature and falsely notarized at least one document. "[I]t is a lawyer's duty to establish a system of office procedure that ensures delegated legal duties are completed properly." *Disciplinary Counsel v. Ball* (1993), 67 Ohio St.3d 401, 404, 618 N.E.2d 159. Whatever safeguards respondent may have established to ensure that his office functioned properly and professionally were clearly inadequate.

{¶ 20} The Restatement of the Law 3d, The Law Governing Lawyers (2000), Section 11, states:

{¶ 21} "(4) With respect to a nonlawyer employee of a law firm, the lawyer is subject to professional discipline if * * *:

{¶ 22} "(a) the lawyer fails to make reasonable efforts to ensure:

{¶ 23} "(i) that the firm in which the lawyer practices has in effect measures giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer; and

{¶ 24} "(ii) that conduct of a nonlawyer over whom the lawyer has direct supervisory authority is compatible with the professional obligations of the lawyer."

{¶ 25} Comment *c* to Section 11 adds:

{¶ 26} "Lack of awareness of misconduct by another person, either lawyer or nonlawyer, under a lawyer's supervision does not excuse a violation of this Section."

{¶ 27} Comment *f* states: "The fact that a lawyer is busy or distracted in other critically important work, such as the work of providing legal services to clients or generating a high percentage of the firm's fee revenue, does not excuse neglecting supervisory responsibilities or ignoring inappropriate conduct on the part of a supervised nonlawyer."

{¶ 28} We have long adhered to the standards described in the Restatement, which are echoed in Model Rule 5.3 of the American Bar Association's Model Rules of Professional Conduct. We cited and quoted from those Model Rules more than ten years ago in *Ball*, 67 Ohio St.3d at 404, 618 N.E.2d 159 (holding that an attorney's failure to supervise his secretary who misappropriated client funds over a ten-year period warranted a six-month suspension). More recent decisions from this and other courts have similarly admonished lawyers for failing to supervise nonlawyer assistants with care. See, e.g., *Lorain Cty. Bar Assn. v. Noll*, 105 Ohio St.3d 6, 2004-Ohio-7013, 821 N.E.2d 988 (imposing a two-year suspension, with 18 months stayed, on a lawyer who failed to adequately

supervise a legal assistant and committed other violations); *People v. Smith* (Colo. Office of Presiding Disciplinary Judge, 2003), 74 P.3d 566 (imposing a nine-month suspension on a lawyer whose legal assistant communicated false information to clients, notarized documents outside the presence of the signer, and failed to inform the attorney of attempts to contact him); *In re Faucheux* (La.2002), 818 So.2d 734 (imposing a one-year supervised probationary period on a lawyer who failed to supervise a nonlawyer employee, resulting in the forgery of a client's name on a settlement document).

{¶ 29} Respondent's conduct fell below the standards described in the Restatement and in ABA Model Rule 5.3. He at best chose to remain oblivious to the improper actions of the persons he hired, thereby violating the trust that his clients and others placed in him and his office staff. We find that Disciplinary Counsel proved by clear and convincing evidence that respondent, in connection with the Cupp matter, violated DR 1–102(A)(5) (barring conduct prejudicial to the administration of justice) and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law).

## Sanction

{¶ 30} A more severe penalty than the one recommended by the board is warranted for respondent's misconduct. Accordingly, respondent is hereby suspended from the practice of law in Ohio for a period of 18 months, with 12 months of the suspension stayed on the condition that a monitor be appointed for respondent by the bar association and that respondent fully comply with any terms imposed by the monitor during the stayed portion of the suspension. If respondent fails to comply with the terms imposed by a monitor, the stay will be lifted and respondent will serve the entire term of actual suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Comstock, Springer & Wilson and David C. Comstock Jr., for relator Mahoning County Bar Association.

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator Disciplinary Counsel.

Matthew C. Giannini and Mary Ann Fabrizi, for respondent.