DISCIPLINARY COUNSEL *v.* YOUNG.

[Cite as *Disciplinary Counsel v. Young,*
113 Ohio St.3d 36, 2007-Ohio-975.]

(No. 2006–1261—Submitted November 15, 2006—Decided March 21, 2007.)

**Per Curiam.**

{¶ 1} Respondent, James Cornell Young of Shaker Heights, Ohio, Attorney Registration No. 0034227, was admitted to the practice of law in Ohio in 1980. On September 8, 1993, we suspended respondent's license to practice for one year, but stayed the suspension in its entirety, and placed him on probation for two years. *Cleveland Bar Assn. v. Young* (1993), 67 Ohio St.3d 226, 617 N.E.2d 669.

{¶ 2} On February 19, 2002, after receiving notice that respondent had been convicted of a felony, we issued an interim suspension of respondent's license pursuant to Gov.Bar R. V(5)(A)(4). *In re Young* (2002), 94 Ohio St.3d 1473, 763 N.E.2d 181. On April 28, 2004, we indefinitely suspended respondent's license for his felonious conduct, which occurred in 2001 when he was involved in paying a witness to falsely exonerate his client of a drug-dealing charge, and for improprieties committed in a 1993 criminal case in which respondent solicited money from one or more defendants to guarantee that his client would not testify for the prosecution. *Disciplinary Counsel v. Young,* 102 Ohio St.3d 113, 2004-Ohio-1809, 807 N.E.2d 317.

{¶ 3} On June 13, 2005, relator, Disciplinary Counsel, charged respondent with additional violations of the Code of Professional Responsibility, alleging neglect and other misconduct in performing his duties as a guardian. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation. The board adopted the panel's findings of misconduct, but modified the recommended sanction.

## Misconduct

{¶ 4} Respondent stipulated to charges that he had violated DR 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), and 9–102(B)(3) (requiring a lawyer to properly account for client funds) while acting as guardian for Michael Gordon. He denied that he had also violated DR 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract for professional services), and relator withdrew a remaining allegation that respondent had violated DR 7–101(A)(3) (prohibiting a lawyer from prejudicing or damaging a client during representation).

{¶ 5} The Cuyahoga County Probate Court appointed respondent to succeed another attorney as Gordon's guardian in May 1992. Two years before, the United States Department of Veterans Affairs had declared Gordon incompetent and awarded him benefits. As guardian, respondent was responsible for arranging for Gordon's medical care and using Gordon's monthly benefit checks to pay his bills and purchase his living necessities.

{¶ 6} Respondent opened a guardianship checking account for Gordon with Key Bank, making himself the only signatory on the account. The probate court required respondent to file a biennial report accounting for Gordon's finances.

{¶ 7} LaTonya Jackson was respondent's secretary from November 1989 until February 2002, when respondent was placed on interim suspension from practicing law. From the beginning of respondent's appointment as Gordon's guardian, Jackson assumed many of the tasks associated with the guardianship. She met with Gordon when he appeared, usually without an appointment, at respondent's office. She also usually purchased whatever necessities Gordon required.

{¶ 8} In time, respondent became impatient with Gordon and felt burdened by the demands of being his guardian, so he delegated to Jackson all of the daily responsibilities of the guardianship. At some point prior to 1996, respondent authorized Jackson to sign his name in carrying out these responsibilities. Respondent was aware that Jackson was signing his name to checks on the Gordon guardianship checking account with Key Bank.

{¶ 9} In January 1996, respondent decided to relinquish his role as guardian, and Jackson agreed to succeed him. Although respondent drafted a motion to

withdraw as Gordon's guardian, he never signed the motion, he did not file it in probate court, and he never followed up to confirm the appointment of his successor. Notwithstanding this, he later shrugged off Gordon's complaints about Jackson, saying that Jackson was his guardian and that he was no longer responsible.

{¶ 10} Jackson was never formally appointed respondent's successor, but she acted as guardian by performing tasks under respondent's name. Jackson filed biennial reports with the probate court in respondent's name and also signed respondent's name to checks written on the guardianship account, and at some point, she even changed the address on the account so that statements no longer went to respondent's office. Eventually, she did not even inform respondent of probate court notices that were sent to him as guardian. Jackson continued to handle the Gordon guardianship in this manner after respondent's February 19, 2002 suspension.

{¶ 11} On December 5, 2002, the probate court removed respondent as Gordon's guardian on its own motion for failure to file an account. On March 20, 2003, the probate court appointed attorney Gregory S. Thomas as the successor guardian for Gordon. Thomas assumed control of the guardianship checking account and filed an inventory. He also moved for a surcharge, seeking to have respondent and involved sureties held responsible for any financial deficiency in the guardianship estate.

{¶ 12} Respondent learned of the surcharge motion from a court magistrate in the summer of 2003. On August 3, 2003, Jackson executed an affidavit acknowledging that respondent had asked her to prepare a motion for his withdrawal as guardian, that she had acted as the custodian of Gordon's funds, and that she had signed the checks on the guardianship account. The surcharge action was later resolved by the parties, and pursuant to an agreed judgment entry, the probate court found that "the successor guardian's services and expenditures for bond were necessary and proper to secure and safeguard assets due to the former fiduciary's willful and wanton neglect." Under the terms of the parties' agreement, the sureties paid the successor guardian for the benefit of his ward "$40,000 for which the former fiduciary failed to account" and $4,101.06 for the reasonable value of the services of the successor guardian, and a judgment was entered against respondent in favor of the sureties for $44,101.06. Respondent has not even attempted to satisfy the judgment against him.

{¶ 13} Respondent thereafter tried to recover damages from Jackson and Key Bank for Jackson's allegedly embezzling and concealing assets, but his complaint was dismissed. Respondent did not, however, disclaim during the disciplinary proceedings his own responsibility for the mistakes in the handling of the

guardianship, readily admitting that he had not properly followed through on the motion to withdraw and that he had not adequately supervised Jackson.

{¶ 14} Based on the stipulations, the panel and board found clear and convincing evidence that respondent had violated DR 1–102(A)(6), 6–101(A)(3), and 9–102(B)(3). Finding that respondent had also intentionally failed to carry out his contract of employment to serve as Gordon's guardian, the panel and board also found a violation of DR 7–101(A)(2). Adopting the panel's report, the board explained:

{¶ 15} "It is undisputed that Respondent was Gordon's guardian. It is also undisputed that despite that fact, Respondent did not want to serve as Gordon's guardian so he passed the responsibility to his secretary. He gave her permission to sign his name and never looked back. Respondent testified that a motion to withdraw as guardian was prepared but never signed or filed. When Gordon called Respondent to voice his concerns about the handling of his guardianship, Respondent told him it was not his problem. Respondent never verified that he was no longer Gordon's guardian or that his secretary was actually Gordon's guardian. We believe Respondent's intentional failure to act as Gordon's guardian and thus carry out the employment contract began when he gave his secretary control of the matter. With each decision or lack of decision Respondent was acting intentionally. Respondent knew he had an employment contract to act as Gordon's guardian and he intentionally failed to carry it out. Moreover, the Agreed Judgment Entry signed by Respondent and filed in probate court contains the following statement: 'The Court further finds that the successor guardian's services and expenditures for bond were necessary and proper to secure and safeguard assets due to the former fiduciary's willful and wanton neglect, which necessitated the appointment of the successor administrator.' We agree with the probate court's assessment of Respondent's behavior."

### Recommended Sanction

{¶ 16} In recommending a sanction for respondent's misconduct, the panel and board weighed the mitigating and aggravating factors of respondent's case, those that favor leniency and those that favor severity. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 17} The board accepted the panel's findings of mitigation, the most persuasive of which are that respondent fully and freely disclosed the extent of his misconduct during the disciplinary process and that he presented evidence of his good character and reputation apart from the unethical conduct. See BCGD Proc.Reg. 10(B)(2)(d) and (e). As to character and reputation, a former Cuyahoga County Court of Common Pleas judge testified that respondent was an experienced criminal-defense lawyer whom he had come to know first in the

courtroom and later through their mutual membership in Alcoholics Anonymous ("AA"). Respondent had joined the judge's AA group during the prior criminal and disciplinary proceedings against him, and Judge Pokorny testified that respondent has a "superior dedication" to the principles of AA. The judge had no reservations about respondent's returning to the practice of law.

{¶ 18} A pastor at Mount Sinai Baptist Church in Cleveland with an anti-substance-abuse ministry similarly testified about respondent's good character and commitment to recovery. The pastor is acquainted with respondent personally and professionally. He advised that respondent has become an active leader in the church community and has enrolled in the seminary to become ordained, and that in the process, respondent has taken responsibility for his mistakes and come to grips with his past behavior.

{¶ 19} A retired physician who met respondent in June 2001 through AA also testified. The physician reported that he attends AA meetings with respondent two to three time per week and has witnessed a "tremendous psychological change" in him. In the physician's opinion, respondent's zealous AA participation is not contrived and is generated by a "deep-seated motivation for an improved, useful, purposeful life."

{¶ 20} Respondent admits that he suffers from a chemical dependency on drugs and alcohol, and the misconduct at issue in this case occurred before he sought treatment for his dependency. Respondent argued that his addictions should have mitigating effect pursuant to BCGD Proc.Reg. 10(B)(2)(g). This provision requires proof that (1) a qualified health-care professional or substance-abuse counselor has diagnosed the lawyer's chemical dependency, (2) the chemical dependency contributed to cause the misconduct, (3) the lawyer has experienced a sustained period of successful treatment, and (4) a qualified health-care professional or substance-abuse counselor has concluded that the lawyer will be able to return, under specified conditions if necessary, to the competent, ethical, and professional practice of law.

{¶ 21} Again based on the panel's findings, the board was not convinced that respondent's chemical dependency contributed to cause his misconduct. Although the associate director of the Ohio Lawyers Assistance Program ("OLAP") testified that a causal connection existed, the board relied on respondent's testimony that he had authorized his secretary to manage the guardianship because he had not wanted to take on Gordon's care in the first place and found Gordon's many demands bothersome. Respondent did not blame his alcohol and drug problems for abandoning his client. Thus, although the panel and board commended respondent for his strides in managing his addiction, neither attributed mitigating effect to his chemical dependency.

{¶ 22} With respect to aggravating features, the panel and board first recounted respondent's extensive disciplinary record. See BCGD Proc.Reg. 10(B)(1)(a). Moreover, although respondent did not profit financially from his misconduct, the panel and board concluded that his neglect of Gordon's guardianship was self-centered in that he had cavalierly handed the job over to his secretary and ultimately could not account for $40,000. See BCGD Proc.Reg. 10(B)(1)(b). Because respondent repeatedly allowed his secretary to act as guardian without supervision, which resulted in four violations of the Code of Professional Responsibility, the panel and board further found a pattern of misconduct and multiple offenses. See BCGD Proc.Reg. 10(B)(1)(c) and (d). Finally, because respondent abandoned his incompetent client and has not reimbursed the sureties for the $44,101.06 they paid to the guardianship estate and the successor guardian, the panel and board determined that respondent had harmed a particularly vulnerable client and had not made restitution. See BCGD Proc.Reg. 10(B)(2)(h) and (i).

{¶ 23} Relator proposed that respondent receive a one-year suspension to run consecutively to the indefinite suspension he is currently serving. In part because the misconduct in this case occurred prior to or contemporaneously with the ethical improprieties for which he was placed on indefinite suspension, respondent proposed a two-year suspension to run concurrently with the earlier sanction.

{¶ 24} The panel declined to recommend extending respondent's sanction through a consecutive suspension, opting for a somewhat more lenient result. The panel explained that respondent's inattention to Gordon's guardianship was less egregious than his deliberate attempts to obstruct justice and solicit bribes and that even with this serious misconduct, this court had not gone so far as to follow the board's earlier recommendation to disbar. *Disciplinary Counsel v. Young,* 102 Ohio St.3d 113, 2004-Ohio-1809, 807 N.E.2d 317. From this, the panel reasoned that we would have issued the same indefinite suspension even if the instant charges had been brought in the earlier case.

{¶ 25} The panel recommended a two-year actual suspension of respondent's license, to run concurrently with the existing indefinite suspension, with a conditional stay of any suspension period remaining if the existing indefinite suspension is terminated upon a petition for reinstatement. As conditions for respondent's reinstatement to the Ohio bar, the panel recommended that respondent be required to (1) show that he has successfully completed an OLAP-approved alcohol- and drug-abuse treatment program and that he can return to the competent, ethical, and professional practice of law and (2) establish his compliance with a payment plan, approved by the OLAP monitor, for making restitution to the appropriate insurance companies. Upon any reinstatement and as further conditions of the stay, the panel recommended that respondent be

placed on probation for three years and be required to (1) continue treatment for his substance-abuse problem under the supervision of an OLAP monitor, (2) submit to testing as directed by the OLAP monitor to ensure sobriety, (3) report quarterly to his OLAP monitor on his treatment progress and his compliance with his payment plan, (4) follow the OLAP monitor's recommendations as to appropriate case management, client communication, and financial responsibility in his practice, and (5) refrain from any further misconduct.

{¶ 26} The board considered the panel report on June 8, 2006, and modified the recommendation, with the panel's approval. The board recommended that respondent be indefinitely suspended, that the suspension run consecutively to the existing indefinite suspension, and that any reinstatement be subject to the conditions in the panel report.

### Review

{¶ 27} Respondent does not object to the board's findings of misconduct, and we agree that he violated DR 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 9–102(B)(3). Part of a lawyer's obligation to his client is to ensure that delegated legal duties are completed properly. *Disciplinary Counsel v. Ball* (1993), 67 Ohio St.3d 401, 404, 618 N.E.2d 159. Because respondent failed to supervise his secretary, disciplinary measures are warranted. *Mahoning Cty. Bar Assn. v. Lavelle*, 107 Ohio St.3d 92, 2005-Ohio-5976, 836 N.E.2d 1214 (lawyer's license suspended for 18 months, with 12 months of suspension conditionally stayed, because he neglected a client's marriage-dissolution case, delayed three months in responding to disciplinary investigation, and failed to supervise nonlawyers in his law office, which resulted in nonlawyers' falsifying documents).

{¶ 28} Respondent objects to the recommended sanction, arguing that a consecutive indefinite suspension is unwarranted for the acts he committed at or around the time of the misconduct for which his license is now under indefinite suspension. He further argues that his chemical dependency did contribute to cause his misconduct, that the misconduct did not harm a vulnerable victim, because Gordon received compensation for all the money that was lost and therefore only the sureties have been harmed, and that he should not be penalized for being unable to make restitution. We overrule respondent's objections and agree that a second consecutive indefinite suspension, with conditions for reinstatement, is appropriate.

{¶ 29} We first reject respondent's assertions that the panel and board had no clear and convincing evidence for the findings relative to mitigating and aggravating factors. Both the panel and board relied on respondent's testimony to find that indifference, rather than addiction, caused him to neglect Gordon's guardianship. Both found that respondent's inattention significantly harmed a vulnerable client in that the guardianship estate lost $40,000, notwithstanding that the loss

was ultimately repaid by sureties. Finally, both found from respondent's admitted failure to repay any of the loss that he had failed to make any restitution. These findings are based on credibility determinations or other evidentiary inferences, determinations to which we normally defer, *Dayton Bar Assn. v. Suarez,* 97 Ohio St.3d 235, 2002-Ohio-5935, 778 N.E.2d 569, ¶ 10, and we accept them.

{¶ 30} We also reject respondent's argument that when relatively contemporaneous ethical infractions are prosecuted separately and suspensions are ordered in both cases, the sanction in the second case should necessarily run concurrently with the first.

{¶ 31} Respondent cites *Cuyahoga Cty. Bar Assn. v. Jaynes* (1993), 66 Ohio St.3d 245, 611 N.E.2d 807, in which we followed the board's recommendation and ordered an indefinite suspension to be served concurrently with an earlier indefinite suspension. Nothing requires this result, however, because, as we recently said in *Cuyahoga Cty. Bar Assn. v. Marosan,* 109 Ohio St.3d 439, 2006-Ohio-2816, 848 N.E.2d 837, each case of charged misconduct is an independent action. This means that the sanction imposed in each case must be justified based on the ethical duties violated, the actual or potential injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases. *Disciplinary Counsel v. Bowman,* 110 Ohio St.3d 480, 2006-Ohio-4333, 854 N.E.2d 480, ¶ 20; *Disciplinary Counsel v. Beeler,* 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 25.

{¶ 32} Consecutive suspensions serve to ensure a lawyer's rehabilitation and thereby protect the public from additional misconduct. Thus, in *Marosan,* when the lawyer had already violated conditions of a partially stayed two-year suspension, leading us to revoke the stay, we ordered him, in a second disciplinary proceeding, to serve a six-month suspension at the end of the two-year period. 2006-Ohio-2816, 109 Ohio St.3d 439, 848 N.E.2d 837. Similarly, we ordered a second indefinite suspension to be served consecutively in *Cuyahoga Cty. Bar Assn. v. King,* 109 Ohio St.3d 95, 2006-Ohio-1932, 846 N.E.2d 37, because of the serious nature of the misconduct.

{¶ 33} Respondent has not failed to comply with our previous indefinite suspension order or his treatment regime; however, the misconduct involved in this case is serious and gives further indication that respondent presents a considerable threat to the public and cannot be permitted to return too soon to the practice of law. The combination of respondent's abandonment of his duties to his incompetent ward and the significance of his prior disciplinary record, which includes acts so egregious that the board recommended that he be disbarred, far outweigh the evidence of good character and cooperation. The

board was thus justified in recommending a sanction that further delays respondent's possible return to the practice of law.

{¶ 34} Respondent is therefore indefinitely suspended from the practice of law in Ohio, and this indefinite suspension shall run consecutively to the indefinite suspension that respondent is currently serving. In addition to the requirements of Gov.Bar R. V(10), respondent must in any petition he files for reinstatement (1) show that he has successfully completed an OLAP-approved alcohol- and drug-abuse treatment program and that he can return to the competent, ethical, and professional practice of law and (2) establish his compliance with a payment plan, approved by the OLAP monitor, for making $44,101.06 in restitution to the appropriate insurance companies. If respondent is reinstated, he shall be placed on probation for three years and be required to (1) continue treatment for his substance-abuse problem under the supervision of an OLAP monitor, (2) submit to testing as directed by the OLAP monitor to ensure sobriety, (3) report quarterly to the OLAP monitor on his treatment progress and his compliance with his payment plan, (4) follow the OLAP monitor's recommendations as to appropriate case management, client communication, and financial responsibility in his practice, and (5) refrain from any further misconduct. Costs are taxed to respondent.

Judgment accordingly.

Moyer, C.J., Rogers, Pfeifer, O'Connor, O'Donnell and Lanzinger, JJ., concur.

Lundberg Stratton, J., concurs in part and dissents in part.

Richard M. Rogers, J., of the Third Appellate District, was assigned to sit for Resnick, J., whose term ended on January 1, 2007.

Cupp, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

**Lundberg Stratton, J., concurring in part and dissenting in part.**

{¶ 35} I concur in the majority's opinion and judgment, except that I would run the indefinite suspension concurrently with respondent's current suspension, as I do not believe that the infraction, which was committed during the same time period as his previous misconduct, warrants the more severe sanction of consecutive time.

Jonathan E. Coughlan, Disciplinary Counsel, and Brian E. Shinn, Assistant Disciplinary Counsel, for relator.

Murman & Associates and Michael E. Murman, for respondent.