DISCIPLINARY COUNSEL *v.* MALEY.

[Cite as *Disciplinary Counsel v. Maley*, 119 Ohio St.3d 217, 2008-Ohio-3923.]

(No. 2008–0038—Submitted February 27, 2008—Decided August 13, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Lawrence M. Maley of Lancaster, Ohio, Attorney Registration No. 0055448, was admitted to the practice of law in Ohio in 1991. Relator, Disciplinary Counsel, charged respondent with violations of the Disciplinary Rules in a two-count complaint. Respondent participated in a hearing on the complaint before a panel of the Board of Commissioners on Grievances and Discipline. The board now recommends that we suspend respondent's license to practice for 18 months with six months stayed on condition that he take classes in office management and ethics. Respondent has not objected to the board's report and recommendation. On review, we find that respondent violated the Code of Professional Responsibility and impose the recommended sanction.

### Misconduct

*Count I*

{¶ 2} Respondent gave his employee Diane Bilinovich ("the secretary") authority to use the office and credit cards, collect client fee payments, manage the office checking account, and meet with clients. Between July 2004 and August 2005, the secretary, in respondent's name, collected filing fees and agreed to file, or filed, at least 39 bankruptcy petitions. In five of these matters, clients made payment, but cases were never filed. In 34 of these matters, petitions were filed without respondent's knowledge.

{¶ 3} The secretary developed a practice of preparing bankruptcy petitions without informing respondent. She would file the bankruptcy case online, taking advantage of the use of the electronic signature and would pay the fees online with respondent's credit card. She would interact with the clients and hire other attorneys, whom respondent used from time to time, to appear at the various bankruptcy hearings.

{¶ 4} The secretary performed various legal functions using the respondent's name and office. She prepared and filed various pleadings such as an amended Chapter 13 plan, motions for redemption of property, and reaffirmation agreements. She also responded to notices and letters from bankruptcy trustees. Respondent claimed that the secretary was processing cases and using his credit cards without his knowledge or consent. Respondent claims that she pocketed fees amounting to $25,000 to $30,000. Over $11,000 in expenses associated with these bankruptcy filings was paid with respondent's credit cards or from respondent's checking account. Bank statements and credit card bills detailing these expenditures were sent to respondent monthly.

{¶ 5} In January 2005, respondent discovered that the secretary had used his charge card to make over $8,300 in personal charges in 2004, for auto repairs, cell phone bills, and the purchase of a computer. When respondent confronted her, she agreed to make monthly payments to repay the debt but made only three $100 payments. In February 2005, she charged an additional $350 of her own expenses on respondent's credit card.

{¶ 6} Respondent terminated the secretary at the end of March 2005, claiming that he was closing his bankruptcy practice. Of the 36 petitions filed under respondent's name, she filed 19 after being fired. She continued to enter respondent's office after business hours. She also continued to use respondent's credit cards, charging over $5,000 to pay bankruptcy court filings under his name.

{¶ 7} In April through June 2005, respondent became aware of the new filings and credit card charges. The secretary told respondent that they were for an unaffiliated lawyer in respondent's suite. That lawyer told respondent in June that the secretary was not handling his bankruptcy cases.

{¶ 8} Respondent's wife, who had begun working in the office in late June, notified him, in a memo dated July 6, 2005, of problems with the bankruptcy cases. She warned respondent that he might get in "deep trouble" if he did not get a handle on the cases. The bankruptcy charges and filings continued into August 2005.

{¶ 9} It was not until September 2005 that respondent reported the secretary's activities to the Lancaster police department. He also contacted the bankruptcy court to terminate his account and to alert the trustees to what had occurred. In

October, respondent contacted the Fairfield County Bar Association regarding the secretary.

{¶ 10} As to Count I, the board found violations of DR 1–102(A)(5) (prohibiting conduct prejudicial to the administration of justice), 1–102(A)(6) (prohibiting conduct adversely reflecting on a lawyer's fitness to practice law), 3–101(A) (prohibiting the aiding of a nonlawyer in the unauthorized practice of law), 3–102(A) (prohibiting the sharing of fees with a nonlawyer), 6–101(A)(3) (prohibiting neglect of an entrusted legal matter), and 7–101(A)(3) (prohibiting intentionally prejudicing or damaging a client during the professional relationship).

## Count II

{¶ 11} Respondent did not have a trust account during 2005 and part of 2004. He regularly deposited unearned retainers and lawsuit settlement checks into his business checking account, commingling them with funds of the law firm.

{¶ 12} As to Count II, the board found violations of DR 1–102(A)(5), 1–102(A)(6), 9–102(A) (prohibiting commingling of client funds with law firm funds), and 9–102(B)(3) (requiring lawyers to maintain complete records of client funds and render appropriate accounts to clients).

## Review

{¶ 13} Respondent did nothing to stop the secretary after he became aware that she was using his credit card to pay filing fees without his permission and that she had accepted retainers in respondent's name. Respondent became aware of unauthorized credit card charges in April 2005 after he had fired the secretary. He accepted her explanation that these were another attorney's charges on his account. He never changed the locks on his office, demanded the keys, or canceled his credit cards. He claims that he did not know about her acceptance of fees until July 2005. Respondent did not notify the authorities or the bankruptcy court until September.

{¶ 14} Respondent granted broad authority to the secretary to deal with and work directly for clients. He either knew or should have known that she was taking money from clients and performing legal work for them. Further, once he had actual knowledge of her actions, he failed to promptly act to protect the clients' interests.

{¶ 15} The secretary's use of respondent's credit cards for unauthorized personal expenses, even after respondent confronted her about it, did not cause him to investigate further. Respondent knew she had financial difficulties and even loaned her money after she had stolen from him by making unauthorized personal charges on his account.

{¶ 16} Respondent neglected his duty to maintain a trust account. He explained his lack of a trust account by blaming his "sheer stupidity and laziness." Significantly, if respondent had properly separated his funds from those of his clients through a trust account and had reconciled the account and his client's records properly, he could have discovered the secretary's activities and stopped them.

{¶ 17} We find that there is clear and convincing evidence that respondent committed the violations found by the board in both Counts I and II.

## Sanction

{¶ 18} The board recommends that we suspend respondent's license to practice for 18 months with six months stayed on the condition that he take office-management and ethics training.

{¶ 19} In recommending a sanction, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found a selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and vulnerability of and resulting harm to victims of the misconduct. BCGD Proc.Reg. 10(B)(1). As mitigating factors, the board noted the absence of a prior disciplinary record, a cooperative attitude toward the proceedings, and respondent's character and reputation. BCGD Proc.Reg. 10(B)(2). We adopt the board's findings as to the aggravating and mitigating factors. In addition, respondent submitted numerous letters attesting to his honesty, integrity, and good character from a judge, elected officials, attorneys, and others. The first assistant prosecuting attorney in Fairfield County testified that he believes that respondent is a person of unquestionable integrity and extremely high moral character. Respondent also testified that he was a founding father of Habitat for Humanity of Fairfield County and had been awarded the 2003 Fairfield County and Ohio "Person of the Year" from the Sertoma club.

{¶ 20} Respondent's lax supervision of his employee allowed her to use respondent's credit card, his bankruptcy court credentials, and his reputation to the detriment of his clients and the court. Appropriate oversight of his practice could have prevented her misconduct. If respondent had read his e-mail notifications from the bankruptcy court, reviewed his bank statements and credit card charges, and reviewed his files on a regular basis, he would have known that something was wrong.

{¶ 21} Although we recognize an attorney's need to delegate, we have insisted on supervision to ensure that delegated legal duties are completed properly.

*Disciplinary Counsel v. Ball* (1993), 67 Ohio St.3d 401, 404, 618 N.E.2d 159. More recent decisions from this and other courts have similarly admonished lawyers for failing to supervise nonlawyer assistants with care. See, e.g., *Lorain Cty. Bar Assn. v. Noll,* 105 Ohio St.3d 6, 2004-Ohio-7013, 821 N.E.2d 988 (imposing a two-year suspension, with 18 months stayed, on a lawyer who failed to adequately supervise a legal assistant and committed other violations); *Richland Cty. Bar Assn. v. Akers,* 106 Ohio St.3d 337, 2005-Ohio-5144, 835 N.E.2d 29 (imposing an 18–month sentence with 12 months stayed for failure to supervise an employee); and *Mahoning Cty. Bar Assn. v. Lavelle,* 107 Ohio St.3d 92, 2005-Ohio-5976, 836 N.E.2d 1214, ¶ 29 (imposing an 18–month suspension with 12 months stayed on a lawyer who "chose to remain oblivious to the improper actions of the persons he hired").

{¶ 22} Whether or not respondent knowingly allowed his employee to engage in the unauthorized practice of law, he was negligent in the supervision of his staff. And his lack of responsibility facilitated her unauthorized practice of law. Respondent's admitted failure to maintain a trust account also demonstrates irresponsibility.

{¶ 23} We therefore suspend respondent from the practice of law for 18 months, with the last six months stayed, on condition that respondent comply fully with Prof.Cond.R. 1.15, Safekeeping Funds and Property, complete a CLE course on law-office management, and, in addition to the required hours, complete an additional three-hour CLE course in ethics and professionalism. If respondent fails to comply with the conditions, the stay will be lifted, and respondent will serve the entire term of the suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Mitchell, Allen, Catalano & Boda and William Mann, for respondent.